IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

FONDA BLAIR                          )
                                     )
v.                                   ) NO. 3-12-0735
                                     ) JUDGE CAMPBELL
RUTHERFORD COUNTY BOARD              )
OF EDUCATION, et al.                 )

MEMORANDUM

Pending before the Court is Defendants' Motion for Summary Judgment (Docket No. 70).

For the reasons stated herein, Defendants' Motion for Summary Judgment is GRANTED, and this

action is DISMISSED.

FACTS

Plaintiff sued her former employer for numerous employment discrimination claims, all of

which have now been dismissed except for a retaliation claim under the Family and Medical Leave

Act ("FMLA").

Plaintiff was a teacher at Siegel High School in Rutherford County, Tennessee.  In August

of 2011, Plaintiff took FMLA leave and did not return to the school until October 17, 2011.  Plaintiff

asserts that, while she was on FMLA leave, Defendant offered training classes to all teachers with

regard to the new system by which teachers in Tennessee were to be evaluated.

Although she and several others who missed the training were given the training after

Plaintiff returned to work, Plaintiff contends that she was not given the *same* training as other

teachers in the school system. She claims she felt isolated and discriminated against by Defendant.

Plaintiff admits that on December 1, 2011, she prepared a retirement letter that she had her

attorney fax to Defendant on her behalf.  In that letter, Plaintiff tendered her retirement as of the end

of December 2011. In addition, she requested a waiver from any requirement that she give 30 days' notice of the retirement. Plaintiff also admits that on December 5, 2011, she had her attorney fax a communication to Defendant saying that Plaintiff did not want the waiver and would continue to work through the 30-day period.

On December 7, 2011, Defendant sent a letter confirming that Plaintiff's retirement had been accepted and her last day of employment would be December 31, 2011. On that same day, Plaintiff's attorney sent a fax to Defendant that indicated Plaintiff wanted to work until January 20, 2012. Then later that same day, Plaintiff's counsel sent another letter to Defendant, indicating that Plaintiff would be retiring, but restating her intent to retire as of January 20, 2012.

On December 8, 2011, Plaintiff faxed another letter to Defendant saying that she wanted to rescind her retirement. By that time, Plaintiff's retirement had been accepted by the Director of Schools, her retirement was being processed, and the job was being posted. There being no precedent for rescinding a retirement, the Director of Schools denied Plaintiff's request. Plaintiff has admitted that as of December 29, 2011, she wanted to retire, and she confirmed that desire to retire by fax dated December 30, 2011.

SUMMARY JUDGMENT

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Pennington v. State Farm Mut. Automobile Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this

burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id*.

In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. *Van Gorder v. Grand Trunk Western Railroad, Inc.*, 509 F.3d 265, 268 (6th Cir. 2007). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. *Rodgers*, 344 F.3d at 595.

## FMLA RETALIATION

An employer may not retaliate against an employee for taking FMLA leave. 29 U.S.C. § 2615(a)(2); *Hunter v. Valley View Local Schools*, 579 F.3d 688, 690 (6th Cir. 2009). A plaintiff can establish her *prima facie* FMLA retaliation claim by showing that (1) she engaged in protected activity; (2) her employer was aware of the protected activity; (3) she was subject to an adverse employment action, and (4) there was a causal connection between the protected activity and the adverse employment action. *Demyanovich v. Cadon Plating & Coatings, LLC*, 747 F.3d 419, 432-33 (6th Cir. 2014).

Here, it is undisputed that Plaintiff took FMLA leave. The Court will assume that Defendant knew she took FMLA leave. Defendant argues that Plaintiff did not suffer an adverse employment action, and, even if she did, it had nothing to do with her taking FMLA leave.

An adverse employment action is a materially adverse change in the terms or conditions of employment because of the employer's conduct. A "materially adverse" change must be more disruptive that a mere inconvenience or an alteration of job responsibilities. *Mitchell v. Vanderbilt University*, 389 F.3d 177, 182 (6th Cir. 2004). *De minimus* employment actions are not materially adverse and a "bruised ego" is simply not enough to constitute an adverse employment action. *Id*.

It is undisputed that when she came back from FMLA leave, Plaintiff went back to her same job in the same classroom, teaching the same subjects and with the same pay she had before she took FMLA leave. Plaintiff claims that while she was on FMLA leave, her work email name was reduced to a comma in retaliation for her taking FMLA leave.[1] Plaintiff also claims that she was told she could not return to the building until the morning she returned from FMLA leave and that was retaliation for taking FMLA leave. Plaintiff also believed that someone was hacking into her computer. She took that issue to the District Attorney, who sent the computer to the TBI, which found nothing. Plaintiff claims that she felt "total isolation" when she came back from FMLA leave, and she attributes at least some of that feeling to the comma having been put in her email address.

The Court finds that these alleged actions do not constitute "materially adverse" employment actions which are actionable under the FMLA. At best, they are *de minimus* inconveniences or *de minimus* changes in the conditions of Plaintiff's employment.

In her Response, Plaintiff states that the record is clear that she did not receive the training that other teachers received concerning the new methods of evaluation. She cites nothing for that assertion. Similarly, without citation to the record, Plaintiff states that she was required to get her

_____

[1]     She admits, however, that regardless of this fact, she received her emails.

4

evaluation on a subject matter that she had never received training on and no other teachers were required to do that.

Because the initial training for the new evaluation model occurred during in-service and there were some teachers who were not present, there was a make-up training put together for those teachers. Ms. Serrano,[2] one of the assistant principals, was responsible for the make-up training and did provide that make-up training to Plaintiff. The make-up training was rescheduled to accommodate Plaintiff's schedule, and Plaintiff attended the training on November 22, 2011.

Plaintiff claims that the other teachers received a half-day of training and she got only twenty minutes. She has cited nothing for that assertion in response to this Motion other than her own testimony. Ms. Martin, an assistant principal, who was responsible for the evaluation system and training testified that the in-service training was two to three hours, "about three hours maybe." She stated because the make-up training was a small group, it lasted about an hour.

Ms. Serrano, who taught the training, has stated by Affidavit that the make-up training she performed was intended to be substantially similar to, and a complete replacement for, the original training that occurred at the beginning of the year that Plaintiff missed. Ms. Serrano also stated that the make-up training Plaintiff had was probably better than the in-service training because there were only two teachers attending and they could have her full attention in terms of questions, redirection, and the like. *Id*. Ms. Serrano stated in deposition that the training she gave to Plaintiff was designed to prepare her for evaluation, just like the training given other teachers in August. Ms. Serrano stated, and Plaintiff agreed, that Plaintiff never indicated to Ms. Serrano that she had any misunderstanding or did not feel prepared as a result of the make-up training session.

---

[2]      Ms. Serrano was certified to train on the evaluation model.

Plaintiff, again with no cite to the record, claims that she was given training only on the instruction component and the training in August for all other teachers also covered planning and environment. Ms. Serrano testified in deposition that the make-up training was to prepare Plaintiff for instruction only because that was all that was covered in August. In addition, Ms Serrano testified that the November training session with Plaintiff was the exact training that occurred in August. Ms. Serrano also testified that she gave Plaintiff the same training she gave the other four persons who did the make-up training. Plaintiff was treated no differently, and Plaintiff retired before her evaluations were conducted. Defendant made no judgment or evaluation of Plaintiff's instruction because she retired before such an evaluation could be done. Thus, Plaintiff cannot show that the alleged lack of training caused an adverse employment action.

Plaintiff also contends that she was constructively discharged, which is an adverse employment action. In this case, Plaintiff retired. When an employee voluntarily resigns, she cannot claim that she suffered an adverse employment action under the FMLA. *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 447 (6th Cir. 1999); *Schindewolf v. City of Brighton*, 107 F.Supp.3d 804, 814 (E.D. Mich. 2015). Here, Plaintiff was not asked to retire; she was not given a "forced choice" between retiring and being terminated.

As indicated above, Plaintiff prepared a retirement letter that she had her attorney fax to Defendant on her behalf. In that letter, Plaintiff tendered her retirement as of the end of December 2011. Thereafter, Defendant sent a letter confirming that Plaintiff's retirement had been accepted and her last day of employment would be December 31, 2011. Despite her attempt to rescind her retirement, Plaintiff has admitted that as of December 29, 2011, she wanted to retire, and she

6

confirmed that desire to retire by fax dated December 30, 2011. Plaintiff voluntarily expressed her intent to retire.

Furthermore, to show constructive discharge, Plaintiff is required to show that working conditions would have been so difficult or unpleasant that a reasonable person in her shoes would have felt compelled to resign. *Anderson v. McIntosh Construction, LLC*, 2014 WL 2207924 at * 7 (M.D. Tenn. May 28, 2014). Plaintiff has not identified competent evidence that indicates that working conditions for Plaintiff after she returned from FMLA leave satisfy this standard. In addition, she cannot show a causal connection between her FMLA leave and the working conditions she now alleges caused her to retire.

As Plaintiff herself argues in her Response, constructive discharge requires both an employer's deliberate creation of intolerable working conditions and the intention to force resignation. *Logan v. Denny's, Inc.*, 259 F.3d 558, 568-69 (6th Cir. 2001). Plaintiff has shown neither in this case.

## CONCLUSION

For all these reasons, Defendant's Motion for Summary Judgment (Docket No. 70) is GRANTED, and this action is DISMISSED.

IT IS SO ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE